**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

JOHN YEAGLEY,

    Plaintiff,

v. : CIVIL ACTION NO.
1:09-CV-19-JOF

ALLSTATE INSURANCE
COMPANY,

    Defendant.

## OPINION AND ORDER

This matter is before the court on Defendant's motion to dismiss [5]; Plaintiff's motion for judgment on the pleadings [10]; and Plaintiff's motion for oral argument [15].

**I. Background**

    **A. Procedural History and Complaint**

Plaintiff, John Yeagley, filed suit against Defendant, Allstate Insurance Company, on January 6, 2009, contending that Allstate improperly refused to pay underinsured motorist ("UM") coverage under an umbrella liability insurance policy with a $1 million limit of liability. Defendant answered Plaintiff's complaint and filed the instant motion to dismiss.

Allstate insured Plaintiff under two separate policies: (1) a primary automobile liability insurance policy ("the Primary Policy") and (2) an umbrella liability insurance policy ("the Umbrella Policy"). *See* Cmplt., ¶ 7. On February 23, 2007, Plaintiff was seriously injured in an automobile accident with an under-insured driver, Lashika Jones. *Id.*, ¶ 8. Jones was at fault in the collision, and Jones' insurer offered Plaintiff the limits of her insurance policy ($25,000) in exchange for a full release. *Id.* Before accepting that offer, Plaintiff made a claim under both of his Allstate policies for under-insured motorist ("UM") coverage. *Id.*, ¶ 9.

On September 10, 2007, Plaintiff's previous counsel sent a letter to Jones' insurer and Plaintiff's Allstate insurer. *Id.*, ¶ 10. Directed to Jones' insurer, Plaintiff's counsel stated the following:

> [Plaintiff] accepts your previous tender of the $25,000 policy limits. Please send a check to our office and include the following language in the release:
>> Although this Release is a full and final release of any and all claims as outlined herein, it is acknowledged and agreed that the settlement evidenced in this instrument is a compromise settlement, and the undersigned, John Yeagley, was not fully compensated for medical expenses or for the pain and suffering resulting from his injuries, and has not been fully and completely compensated for the economic and non-economic losses he claims to have suffered.

*See* Cmplt., Exh. A, at 1.

AO 72A
(Rev.8/82)

> Directed to Plaintiff's own insurer, Allstate, Plaintiff's counsel stated:
>
> Please accept this letter as a demand for payment of $25,000 to settle [Plaintiff's] claim. As you can see, his medical expenses due to this accident are over $225,000, which is well in excess of the policy limits.
>
> With regard to the Uninsured and Underinsured Motorist Coverage carrier Allstate, pursuant to O.C.G.A. § 33-7-11, if the insurer shall refuse to pay any insured any loss covered by this Code section within 60 days after a demand has been made by the insured and a finding has been made that such refusal was made in bad faith, the insurer shall be liable to the insured in addition to any recovery under this Code section for not more than 25 percent of the recovery and all reasonable attorney's fees for the prosecution of the case under this Code section.

*Id.*, at 2. Plaintiff's demands to Allstate related to the limits of his UM coverage under the Primary Policy. Cmplt., ¶ 10.

After investigation, Allstate offered Plaintiff the remaining limits of his Primary Policy. *Id.*, ¶ 11; *see also* Oct. 22, 2007 letter attached as Exh. B to Plaintiff's complaint. Allstate further commented, "[w]e are investigating the umbrella policy and how it may apply to this matter." *See* Cmplt., Exh. B, at 1. Before Allstate would make payment under the Primary Policy, it requested that Plaintiff execute a release. *See* Cmplt., ¶ 12. The Proposed Release stated that Plaintiff "hereby forever releases and forever discharges Allstate from any and all liability and from any and all contractual obligations whatsoever under the coverage designated above of Policy No. 91507120 [the Primary Policy]." *See* Cmplt., Exh. C, at ¶ 1. The Proposed Release also contained a certification that Plaintiff "covenants that no release or settlement of any such [underlying tort] claim, demand or

3

cause of action has been made." *Id.*, ¶ 3. Because Plaintiff had reached a settlement with Jones' insurer, Plaintiff asked Allstate to remove that clause from the Proposed Release. *See* Cmplt., ¶ 13. Allstate agreed to do so. *Id.* Plaintiff and Allstate agreed to insert the following language into the Proposed Release: "This release in no way waives the rights of the insured, JOHN YEAGLEY, to recover under his umbrella policy, policy 915213014." *See id.*, ¶ 14; Exh. D ("Revised Release").

On December 26, 2007, Allstate denied Plaintiff's claim under the Umbrella Policy. Allstate informed Plaintiff it was denying his claim because "[p]ursuant to Georgia law, the Yeagleys' execution of the general release will bar recovery for underinsured benefits under the umbrella policy." *See* Cmplt. Exh. E.

In his complaint, Plaintiff alleges that Allstate has waived its right to raise Plaintiff's release of Jones because (1) it agreed to the Revised Release and paid the policy limits of the Primary Policy with full knowledge of Plaintiff's release of Jones; and (2) it conducted itself in a manner which led Plaintiff to believe that he would be able to recover under the Umbrella Policy despite his settlement with Jones. *See id.*, ¶¶ 18-19.

Plaintiff seeks a declaratory judgment that Allstate has waived any coverage defense related to Plaintiff's failure to obtain a judgment against Jones and Allstate is obligated to pay Plaintiff's underinsured motorist claim under the Umbrella Policy. *Id.*, ¶ 22. Under his breach of contract claim, Plaintiff contends that he has satisfied all conditions precedent to

4

Allstate's payment of his claim for UM benefits under the Umbrella Policy, but Allstate has failed to do so. *Id.*, ¶¶ 29-30. Finally, Plaintiff raises a bad faith claim under O.C.G.A. §§ 33-4-6 and 33-7-11.

### B. Contentions

Allstate contends that because Plaintiff executed a full and not limited release with Jones, Plaintiff is barred from bringing any future claims against her and therefore cannot be awarded underinsured motorist benefits under Allstate's umbrella policy because he cannot satisfy the statutory condition precedent. Allstate argues that it did not waive the condition precedent because its affirmative defenses did not accrue until the suit was filed and therefore Allstate's prior statement that it was investigating whether the umbrella policy was applicable could not have operated as a waiver.

Plaintiff admits that the release he signed with Jones was a "full" release and was not limited but responds that Allstate waived its right to reject coverage based on Plaintiff's full release of Jones because Allstate had full knowledge of the details of Plaintiff' release with Jones and also acted in a manner which led Plaintiff to believe he could still recover under the Umbrella Policy. Plaintiff argues Allstate had knowledge of the details of his release with Jones because (1) Allstate offered to pay to the limits of Plaintiff's Primary Underinsured Motorist Policy, (2) Allstate informed Plaintiff at the time it offered those limits that it was still investigating whether the Umbrella Policy applied, (3) Allstate agreed

5

to revise its Release with Plaintiff to remove any statement that Plaintiff had not signed a release with the tortfeasor, and (4) Allstate agreed to insert the following language in the Release it signed with Plaintiff: "This release in no way waives the rights of the insured, JOHN YEAGLEY, to recover under his umbrella policy, policy 915233014."

## II. Discussion

### A. Condition Precedent

Georgia has a statutory scheme governing underinsured or uninsured motorist coverage. The Supreme Court of Georgia explained the purpose of enacting the state's statute governing uninsured motorist coverage in 1992 (and amended in 1994). The Court stated:

> The legislature enacted O.C.G.A. § 33-24-41.1 in 1992 to make meaningful the ability of a claimant to settle with the tortfeasor's insurance carrier while preserving his UM claim. Prior to its enactment, a UM carrier was entitled to insist on a judgment in excess of the liability policy limits before fixing coverage under its policy. Therefore, a claimant could not maintain an action against his own UM carrier if he had settled with the tortfeasor's carrier without the agreement of the UM carrier. O.C.G.A. § 33-24-41.1(c) changed this circumstance by expressly providing that UM policies cannot require permission of the UM carrier before a claimant settles with a liability carrier. Thus, the statute eased both the process of plaintiffs' recovering for their injuries and the process of resolving lawsuits.

*Daniels v. Johnson*, 270 Ga. 289, 290 (1998).

As Frank Jenkins & Wallace Miller explain in their treatise on Georgia Automobile Insurance Law, the protection of the Georgia statute:

6

> would apply where there is a liability insurer providing coverage to the tort-feasor and an underinsured motorist carrier providing protection to the claimant. In that instance, the liability insurer could enter into a settlement with the claimant in return for the limited release provided by this Code section, and thereby be relieved of any other payment to the claimant under the liability policy, but not of duties owed to the insured under the policy. At the same time, the claimant could then pursue its claim against the underinsured motorist insurer, notwithstanding that the claimant has entered into a limited release with the tort-feasor and the tort-feasor's insurer.

Jenkins & Miller, Ga. Automobile Ins. Law. § 17.2(b) (2008 ed.).

In *Kent v. State Farm Mut. Auto. Ins. Co.*, 233 Ga. App. 564 (1998), the court applied the statutory scheme. There, the plaintiffs (Kent) had been injured by Holloway, an underinsured motorist. The Kents filed suit against Holloway and also served their uninsured/underinsured motor carrier, State Farm. The Kents executed a limited liability release relieving Holloway of liability under the terms of O.C.G.A. § 33-24-41.1. *Id.* at 564. The Kents then voluntarily dismissed with prejudice all claims against Holloway. *Id.* After the Kents filed the dismissal, State Farm moved for judgment on the pleadings arguing that even though the Kents had only signed a limited liability release, their dismissal with prejudice of their claims against Holloway statutorily barred the Kents from recovering damages from State Farm.

The court agreed and held:

> Pursuant to the language of OCGA § 33-24-41.1, the Kents defeated their ability to recover damages from their underinsured motorist carrier, State Farm, by voluntarily dismissing with prejudice their claims against the defendant driver rather than merely executing a limited liability release

7

> against her. OCGA § 33-24-41.1 provides that the injured party may execute a limited release of the tortfeasor and its insurer, relieving them from all liability, and still retain the right to pursue his own insurer for other available coverage, here, underinsured motorist coverage. However, the injured party must establish legal liability of the defendant driver of an underinsured vehicle before recovery is allowed under the driver's uninsured motorist coverage. OCGA § 33-7-11(a)(1). Legal liability is defined as the securing of a judgment against the underinsured motorist in order to collect underinsured/uninsured motorist benefits from the carrier. A judgment obtained against the uninsured motorist is a condition precedent to recovery against an automobile liability carrier under the provisions of uninsured motorist coverage. An injured party who executes a limited release under OCGA § 33-24-41.1 may still proceed to judgment against the tortfeasor. Such a release under those conditions would not bar proceeding against the uninsured motorist carrier. The limited release therefore does not affect the injured party's ability to obtain a judgment against the tortfeasor, but merely limits the tortfeasor's personal liability in the amount of available insurance coverage.

*Id.* at 565 (quotations and citations omitted). Even though the Kents used the appropriate limited liability release, the fact that they voluntarily dismissed Holloway with prejudice meant that they could not establish her legal liability and were barred from recovering underinsured motorist benefits from State Farm. *Id.* The court further affirmed the trial court's denial of the Kents' motion to set aside the dismissal with prejudice under a theory of mistake. *Id.*

In *Cook v. State Farm Mut. Auto Ins. Co.*, 237 Ga. App. 400 (1999), the plaintiff insured wanted to settle with the underinsured tortfeasor and then seek coverage under his insurer's uninsured/underinsured coverage. *Id.* at 400. Cook contended he complied with the statutory requirement of a limited release in his agreement with the tortfeasor. *Id.* at 401.

8

However, Cook's release was entitled "General Release" and subtitled "Release of All Claims." *Id.* The Release used terms such as "all claims arising out of the incident described below," and releases the tortfeasors, including their heirs, agents, employees, etc. *Id.* Cook did strike out a portion of the Release which indicated that it applied to "any and all other persons, firms and corporations of." *Id.* Cook argued that by striking this language, his rights against State Farm were preserved. *Id.*

The court held that under the terms of the Release, it was plain that Cook had released all of his claims against the tortfeasor. *Id.* The court then went on to consider whether the language of the Release was limited sufficiently so as to preserve Cook's claims against the underinsured motorist insurers. *Id.* Following the law set out in *Kent*, the court determined that despite Cook's arguments that he has misunderstood the import of the Release, the court determined that "Cook has failed to take those steps which would have indicated, without equivocation, that his release of Crawford was intended to allow him to retain his right to sue the insurers on their derivative liability." *Id.* at 403. *See also Rodgers v. St. Paul Fire & Marine Ins. Co.*, 228 Ga. App. 499 (1997) (where plaintiff executed general release in settlement with tortfeasor, plaintiff no longer entitled to recovery from underinsured motorist carrier, even though plaintiff wrote to insurer announcing his intention to settle with tortfeasor); *Darby v. Mathis*, 212 Ga. App. 444 (1994) (broad

language in release rendered it "general" and therefore not "limited" release required by statute).

These cases make clear, and Plaintiff does not appear to dispute, that Plaintiff's settlement with Jones' insurance carrier was "full" and not "limited" and under general circumstances would lead to a bar on further underinsured motorist coverage from Plaintiff's own insurer. However, here, because Allstate was involved with Plaintiff's negotiations with Jones' insurer as a result of its Primary Policy covering Plaintiff, the question of whether Allstate waived any objections to Plaintiff seeking coverage under the Umbrella Policy becomes more complicated.

### B. Waiver

The court agrees with Plaintiff that Defendant's reliance on affirmative defenses is misplaced. The issue of Plaintiff's release with Jones is a matter of statutory condition precedent of underinsured motorist coverage and whether Defendant waived that condition. It is of no moment that Defendant has raised that in the procedural form of an affirmative defense.

Under Georgia law, defenses to an insurer's obligation to pay a claim fall into two general categories. Under a "policy defense," an insurer denies coverage based on the insured's failure to fulfill a procedural condition of the insurance policy. *See Sargent v. Allstate Ins. Co.*, 165 Ga. App. 863, 865-66 (1983). A party may assert defenses of estoppel

10

and waiver in "policy defense" cases, since the conditions exist purely for the benefit of the insurer and it may waive them if it chooses. *Id.* An insurer makes a "coverage defense," by contrast, when it argues that the insurance policy does not cover the specific injury in question. *Andrews v. Georgia Farm Bureau Mutual Insurance Co.*, 226 Ga. App. 316, 317 (1997). Estoppel and waiver may not be asserted in "coverage defenses," since to do so would expand the coverage beyond the scope of the insurance contract. *Id.* ("The longstanding general rule is that neither waiver nor estoppel can be used to create liability not created by an insurance contract and not assumed by the insurer under the terms of the policy.").

While the parties focus primarily on the "policy defense" issue, Allstate does make a brief pass at arguing that it also asserts a coverage defense and that to award Plaintiff monies under the Umbrella Policy would expand the scope of coverage provided under that Policy. However, it is clear that the risk here – injury by an underinsured motorist – was one intended to be covered by the policy. The only question is whether Plaintiff met the procedural preconditions to payment on that risk – not signing a full release with the tortfeasor. A finding that Defendant waived this requirement would not expand the scope of risk covered by the insurance policy, and therefore the court turns its attention only to whether Allstate has waived a "policy defense."

11

It is clear that an insurer may waive the protections of O.C.G.A. § 33-24-41.1. Under a prior version of the statute, the Supreme Court of Georgia held that the requirement of first obtaining a judgment against a tortfeasor as a condition precedent to recovery under uninsured motorist provisions is for the benefit of the insurer and therefore may be waived by the insurer notwithstanding the statutory requirement. *U.S. Fidelity & Guaranty Co. v. Lockhart*, 229 Ga. 292 (1972), *adopting* 124 Ga. App. 810 (1971)). "Such provisions and conditions precedent to recovery upon the policy whether contained in the policy or contained in a statute, unless contrary to public policy, are waived where the insurer has lead the insured to believe that the insured will be paid without suit by its actions in negotiating for settlement or direct promises to pay." *Id.* at 811.

Georgia courts have held that certain actions by the insurer would not waive the provisions of the statute. *See*, *e.g.*, *Lowes v. Allstate Ins. Co.*, 204 Ga. App. 148 (1992) ("filing of an answer or other response by an insurer in its own name . . . does not constitute a waiver of any issues regarding the uninsured motorist's tort liability," and Allstate's answering of complaint without making an election under OCGA § 33-7-11(d) did not affect plaintiff's rights nor did it waive condition precedent).

O.C.G.A. § 33-24-40 also provides in general that "investigating any loss or claim under any policy or engaging in negotiations looking toward a possible settlement of any loss or claim" does not constitute "waiver of any provision of a policy or any defense of the

12

insurer under the policy." This provision protects insurers while they investigate, even if they fail to disclaim liability or fail to give the insured notice of their reservation of rights. *Brazil v. Government Employees Ins. Co.*, 199 Ga. App. 343, 344 (1991). Therefore, the mere fact that Allstate was investigating the applicability of coverage under its Umbrella Policy would not constitute waiver of the procedural protections afforded to Allstate under O.C.G.A. § 33-24-41.1.

However, the closer question in this instance is whether Allstate – knowing that Plaintiff had given a full release to Jones and her insurer – took actions inconsistent with the possibility of asserting a defense of waiver. For example, in *State Farm Mutual Automobile Insurance Co. v. Wright*, 137 Ga. App. 819 (1976), the court held that a "liability insurer with knowledge of noncompliance by its insured of a condition of the policy which could be a ground of forfeiture of coverage, which assumes and conducts the defense of an action brought against the policyholder, is thereafter estopped in an action upon the policy from asserting such forfeiture or noncoverage." *Id.* at 821.

While there has been no assumption or conduct of a defense by Allstate on behalf of Plaintiff here, *Wright* also states that conditions precedent may be "expressly waived, or waived by conduct inconsistent with an intention to enforce strict compliance with the condition, by which the insured is led to believe the insurer does not intend to require such compliance." *Id.* at 822. "Where the effect of such contractual provision works as a

13

forfeiture of the policy benefits, and since forfeitures are not favored by law, the court will strictly construe the provision against the insurance company and small circumstances will be sufficient to show a waiver by the company." *Id.*; *see also Sargent v. Allstate Ins. Co.*, 165 Ga. App. 863 (1983) (insurer waived requirement that insurance coverage apply only to resident relative where it knew at time insured filed claim and when it paid claim that actor was not resident relative because "payment by the insurer with knowledge of the pertinent circumstances giving it a policy defense waives its right to rely thereon").

Allstate makes much of the order in which certain events happened, arguing that while it may have agreed with Plaintiff about the money to be paid out under the Primary Policy, it did not reach agreement about the Umbrella Policy until October, and therefore that agreement cannot be seen as a waiver of its defenses to payment under the Umbrella Policy. The court finds this is not the appropriate focus of analysis. Rather, Plaintiff argues that Allstate knew of his full settlement with the tortfeasor and even changed the statement of release on its own form. This knowledge is what Plaintiff argues triggers the waiver of the umbrella defense. Plaintiff's waiver argument is not based on the fact that Allstate paid monies to Plaintiff on the Primary Policy.

The court finds most significant here that Allstate agreed to insert the following language in the Release it signed with Plaintiff: "This release in no way waives the rights of the insured, JOHN YEAGLEY, to recover under his umbrella policy, policy 915233014."

14

That is to say that Allstate – being aware that Plaintiff was granting a "full" release to Jones, agreed with Plaintiff that the release he gave to Jones would not waive his rights to recover under the Umbrella Policy. The court finds this action would certainly come within *Wright*'s description of conduct inconsistent with the intent to enforce compliance with a condition of insurance. Under these circumstances, any reasonable insured would believe that the release he signed with Jones would not impact his ability to recoup payment under the Umbrella Policy.

For these reasons, the court finds that Allstate waived its "policy defense" of barring coverage under the Umbrella Policy in accordance with O.C.G.A. § 33-24-41.1 because Plaintiff signed a full release with Jones. Accordingly, the court DENIES Defendant's motion to dismiss [5] and GRANTS Plaintiff's partial motion for judgment on the pleadings [10] on Count I of Plaintiff's complaint for declaratory judgment that Allstate has waived any coverage defense related to Plaintiff's failure to obtain a judgment against Jones and Allstate is obligated to pay Plaintiff's underinsured motorist claim under the Umbrella Policy. *See* Cmplt., ¶ 22.

## III. Conclusion

The court DENIES Defendant's motion to dismiss [5]; GRANTS Plaintiff's partial motion for judgment on the pleadings [10]; and DENIES AS MOOT Plaintiff's motion for oral argument [15].

15

**IT IS SO ORDERED** this 12th day of August 2009.

                                              /s J. Owen Forrester
                                              J. OWEN FORRESTER
                                              SENIOR UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)